IN THE UNITED STATES BANKRUPTCY CCOURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
AT NASHVILLE

| | | |
|---|---|---|
| IN RE: | ) | |
| EMPACT MEDICAL SERVICES, | ) | Bk. No. 09-02638-GP3-7 |
| INC., | ) | Chapter 7 |
|     Debtor. | ) | Judge Paine |
| | ) | |
| DAVID G. ROGERS, TRUSTEE, | ) | |
| | ) | |
|     Plaintiff, | ) | |
| | ) | |
| v. | ) | Adv. Pro. No. _____ |
| | ) | |
| KATHLEEN SEBELIUS in her Official | ) | |
| Capacity as Secretary of the | ) | |
| U.S. DEPARTMENT OF HEALTH | ) | |
| AND HUMAN SERVICES; RENARD | ) | |
| MURRAY in his Official Capacity as the | ) | |
| Regional Administrator for Region 4 for | ) | |
| the CENTERS FOR MEDICARE AND | ) | |
| MEDICAID SERVICES; SUSAN | ) | |
| COOPER in her Official Capacity as the | ) | |
| Commissioner for the TENNESSEE | ) | |
| DEPARTMENT OF HEALTH and for | ) | |
| the EMERGENCY MEDICAL | ) | |
| SERVICES DIVISION ; and, DARIN | ) | |
| GORDON in his Official Capacity as the | ) | |
| Director of TENNCARE, | ) | |
| | ) | |
|     Defendants. | ) | |

<u>**COMPLAINT FOR TURNOVER OF MEDICARE/TENNCARE/PRIVATE PAY
RECEIVABLES AND ESTABLISHING PROCEDURES IN AID OF TURNOVER,
INCLUDING GRANTING RELIEF UNDER 11 U.S.C. SECTION 105(a)**</u>

Comes now Plaintiff David G. Rogers, Chapter 7 Trustee in the referenced chapter 7 case (the "Plaintiff" or the "Trustee"), and files this action against the Defendants for turnover of Medicare/TennCare/Private Pay Receivables and other relief in aid of such turnover and states as follows:

## JURISDICTION

1. This Court has jurisdiction over this adversary proceeding pursuant to 28 U.S.C. § 1334. This is a core proceeding under 28 U.S.C. § 157(b)(2) (A), (E) and (O).

2. Venue is proper under 28 U.S.C. §§ 1408 and 1409.

## PARTIES AND FACTUAL BACKGROUND

3. Trustee was appointed as the chapter 7 trustee on May 22, 2009, following the Court's emergency conversion of this case from chapter 11 to chapter 7 on that same date. Trustee continues to serve as the chapter 7 trustee.

4. Defendant Kathleen Sebelius is the Secretary for the U.S. Department of Health Human Services, which is responsible for administration and oversight of the Medicare and Medicaid programs.

5. Defendant Renard Murray is the Regional Administrator for Region 4 for The Centers for Medicare and Medicaid Services, which is responsible for regional administration and oversight of Medicare and Medicaid programs, including the State of Tennessee.

6. Defendant Susan Cooper is the Commissioner for the State of Tennessee Department of Health, which is responsible for administration and oversight of health care related services, including without limitation, the TennCare program and licensing and oversight of ambulatory transportation providers through the Emergency Medical Services Division.

7. Defendant Darin Gordon is the Director of the TennCare program.

8. This case was commenced by the filing of an involuntary chapter 11 petition against Empact Medical Services, Inc. (the "Debtor" or "Empact") by Elizabeth DeBusk, one

2

Case 3:09-cv-00416 Case 3:09-ap-03348 Document 1-2 Filed 04/26/11 Filed 08/14/09 Page 2 of 10 Page 2 of 10 Desc Main
Document    Page 2 of 10

of Debtor's principal owners, and two creditors, on March 9, 2009. An Order for Relief was entered on April 17, 2009.

9. Debtor operated as a debtor in possession until the case was converted on May 22, 2009, upon the emergency motion of the U.S. Trustee. David Rogers was appointed as the chapter7 trustee (the "Trustee") and continues in that capacity.

10. Upon information and belief, from approximately 2002 until the conversion to chapter 7, Debtor operated a fleet of ambulances, staffed with emergency medical technicians, and provided emergency care and transportation, as well as non-emergency transport services.

11. Originally, Debtor operated in Rutherford County, Tennessee. In December of 2003, Debtor expanded operations to Shelby County, Tennessee. From May of 2007 through June of 2008, Debtor also operated ambulance services in Humphreys County, Tennessee.

12. According to the records of the State of Tennessee, Debtor was first licensed in 2002. *See* Health Regulatory Boards System record for Empact Medical Services attached hereto as **Exhibit 1**.

13. On a July 1, 2007, the state licensing statute for ambulance services providers was amended to require county-specific licenses.

14. Upon information and belief, Debtor continued to operate in Shelby County after July of 2007 using an incorrect license number (for Rutherford County), which was not discovered by the State until late 2008.

15. Upon information and belief, sometime before June 30, 2008, Debtor applied for renewal of its operating license for Rutherford County and/or Shelby County. In October of 2008, Debtor inquired about the status of its license renewal and was advised by the State

that the renewal application could not be located. Debtor hand delivered a duplicate license renewal application and paid all the required fees.

16. Upon information and belief, notwithstanding the status of Debtor's license, sometime between June of 2008 and February of 2009, the State inspected all of Debtor's ambulances, including those located in Shelby County and those located in Middle Tennessee, and issued operating stickers for the ambulances.

17. Sometime in April of 2009, Debtor became aware of a problem with the Shelby County license and was advised by Richard Land, a state employee, that Debtor had no operating license for Shelby County. Debtor thereafter discontinued operations in Shelby County.

18. At no time during the discussions with Mr. Land regarding licensure for the Shelby County operations were any issues or potential problems with the Rutherford County license mentioned

19. By letter dated April 20, 2009 (the "April 20 Letter"), Defendant Commissioner Susan Cooper, through her designee, purportedly advised Debtor that its license renewal for Rutherford County and its application to obtain a county-specific license for Shelby County were both denied. *See* Letter of April 20, 2009 from Tennessee Department of Health attached hereto as **Exhibit 2**. Upon information and belief, Debtor did not actually receive this letter.

20. Neither Defendant Commissioner Cooper nor any designee took action to confirm Debtor's receipt of the letter, including whether or not Debtor continued to operate following the date of the letter.

21. Another letter dated May 18, 2009 (the "May 19 Letter") was sent in follow up and is attached hereto as **Exhibit 3**. Upon information and belief, neither Defendant Commissioner Cooper nor any designee took action to confirm Debtor's receipt of the letter, including whether or not Debtor continued to operate following the date of the letter.

22. The State of Tennessee received actual notice of Debtor's bankruptcy case.

23. Despite having notice of the Debtor's bankruptcy, neither the Defendant Commissioner Cooper nor any of the divisions or agencies responsible for administration and oversight of ambulatory transportation services providers within the Tennessee Department of Health took any action in the bankruptcy case, including compelling Debtor to cease and desist in providing ambulance services.

24. Debtor's provider number, which is now referred to as the Provider Transaction Access Number or "PTAN" was deactivated on February 18, 2009.

25. This deactivation occurred because Debtor failed to provide requested information in follow up to its submission of a CMS Form 855B notice of a change of practice location address and the "pay to" address, including providing verification of an active license.

26. "CMS" refers to the Centers for Medicare and Medicaid Services, which was formerly known as the Health Care Financing Administration ("HCFA"), and is the agency within the U.S. Department of Health and Human Services responsible for administering Medicare, Medicaid, and the Children's Health Insurance Program.

27. Prior to Medicare contracting reforms, the federal government had a two-part private contracting system in which intermediaries handled Medicare Part A hospital services and carriers handled Part B doctors' services and outpatient care. Under the reforms, one

private contractor or Medicare Administrative Contractor ("MAC") will handle both Part A and Part B matters for a particular geographical region (which greatly reduces the number of Medicare contractors).

28. Claims cannot be submitted to or processed by CMS or its agent carrier or MAC without an active PTAN.

29. Upon information and belief, Debtor submitted claims to and was paid by Medicare for services rendered through some time in February of 2009. Upon information and belief, Debtor submitted claims to and was paid by TennCare or TennCare managed care organizations for services rendered through some time in February of 2009.

30. Based on information obtained by the Trustee and his agents, the Trustee believes that there are outstanding receivables owed to the bankruptcy estate (the "Outstanding Receivables") totaling more than $300,000.

31. These Outstanding Receivables are for ambulance services provided by Debtor.

32. Upon the conversion of Debtor's case from chapter 11 to chapter 7, Debtor's ambulance business was immediately shut down and the Trustee took possession of Debtor's ambulances, narcotics, and other assets.

33. Debtor is no longer operating or providing any ambulance services.

34. To the best of the Trustee's knowledge, the Outstanding Receivables are free and clear of any liens or other encumbrances.

35. The Trustee is unable to submit claims and collect these Outstanding Receivables because of the deactivated PTAN.

6

Case 3:09-cv-00416 / Case 09-03348 Document Filed 08/14/09 Entered 04/26/11 Page 6 of 10 Desc Main Document Page 6 of 10

## COUNT I - TURNOVER

36. The Trustee incorporates the preceding allegations as if fully rewritten herein.

37. Substantial portions of the Outstanding Receivables are for Medicare or TennCare covered services provided by Debtor for which payment is owed by the Defendants.

38. The Outstanding Receivables are property of the bankruptcy estate subject to turnover under 11 U.S.C. § 542(a) and (b).

## COUNT II – PROCEDURES IN AID OF TURNOVER (LICENSING AND DECLARATORY JUDGMENT)

39. The Trustee incorporates the preceding allegations as if fully rewritten herein.

40. Section 105(a) of the Bankruptcy Code grants this Court broad equitable authority to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." 11 U.S.C. § 105(a).

41. The basic purpose of section 105 is to enable the bankruptcy court to do whatever is necessary to aid its jurisdiction; that is, anything arising in or relating to a bankruptcy case.

42. Facilitating the Trustee in fulfilling his statutory duty under section 704(a) to collect and reduce to money the Outstanding Receivables is an appropriate exercise of the Court's equitable powers under section 105(a).

43. Section 105(a) is appropriately utilized to give relief from enforcement of state and federal laws and regulations that would impair the value of estate assets or threaten the likelihood of payment to creditors.

44. This Court may utilize Section 105(a) to compel Defendant Susan Cooper and the Emergency Medical Services Division to treat the license as having been in effect for

7

purposes of collection of Outstanding Receivables at least until April 20, 2009, if not later due to their failure to timely take action to compel the Debtor to cease and desist in providing ambulance services.

45. Alternatively, the Court may, upon the facts and circumstances of this proceeding, declare Debtor's license to have been in effect solely for purposes of collection of Outstanding Receivables through the date of conversion on May 22, 2009, or such earlier date as the Court deems appropriate.

## COUNT III – PROCEDURES IN AID OF TURNOVER (PTAN)

46. The Trustee incorporates the preceding allegations as if fully rewritten herein.

47. The Court may utilize Section 105(a) to compel reinstatement of the PTAN or otherwise fashion relief to enable the Trustee to submit and collect the Outstanding Receivables for the benefit of creditors.

48. Alternatively, the Court may authorize the Trustee to submit claims and compel processing of those claims notwithstanding deactivation of Debtor's PTAN.

## COUNT IV – PROCEDURES IN AID OF TURNOVER (IMMEDIATE SUBMISSION OF CLAIMS)

49. The Trustee incorporates the preceding allegations as if fully rewritten herein.

50. The Court may utilize Section 105(a) to immediately authorize the Trustee to begin submitting claims, notwithstanding any statutes or regulations to the contrary.

51. Funds received would be placed in a separate Chase Bank interest bearing bank account. The Trustee would treat said bank account as an escrow and funds therein would not be used for any purposes without Order of this Court.

## COUNT V – PROCEDURES IN AID OF TURNOVER (TOLLING)

52. The Trustee incorporates the preceding allegations as if fully rewritten herein.

53. Despite Trustee's best efforts to reach a consensual resolution with the State of Tennessee (through the Office of the Attorney General) and the U.S. Department of Health and Human Services (through the U.S. Attorney), the Trustee was forced to bring this Complaint for turnover and other relief to collect outstanding accounts receivable owed to the bankruptcy estate.

54. Notwithstanding their lack of cooperation, the Defendants (through counsel) have asserted that there are time periods within which such claims for reimbursement must be made, which timing operates to the Trustee's detriment.

55. The Court may utilize its equitable authority, including under Section 105(a), to toll any periods for submission of claims for reimbursement or collection of the Outstanding Receivables.

## COUNT VI – PROCEDURES IN AID OF TURNOVER
## (MODIFICATION OR WAIVER OF CERTIFICATION)

56. The Trustee incorporates the preceding allegations as if fully rewritten herein.

57. Ordinarily, claims submitted for reimbursement by Medicare and/or TennCare must be accompanied by a certification, the intentional falsification of which results in criminal penalties.

58. The Court may utilize Section 105(a) to modify and/or waive this certification so that the Trustee may submit claims based only on available information.

WHEREFORE, the Trustee respectfully requests that the Court enter an order:

(a) authorizing the Trustee's submission of Medicare and TennCare claims and/or private pay insurance claims by waiver of the operating provider requirements, including

without limitation, licensing and certifications or such other relief as would accomplish the same result;

(b)  directing the processing of claims submitted by the Trustee notwithstanding Debtor's failure to otherwise comply with applicable guidelines or statutory provider requirements;

(c)  tolling the time period for submission of claims for reimbursement or other efforts to collect the Outstanding Receivables;

(d)  modifying and/or waiving any certification of claims by the Trustee; and,

(e)  granting such other relief and establishing such other procedures as are necessary and appropriate for the Trustee to submit claims and collect the Outstanding Receivables.

Respectfully submitted,

HARWELL HOWARD HYNE
GABBERT & MANNER, P.C.

By:  /s/ Barbara D. Holmes
Barbara D. Holmes
315 Deaderick Street, Suite 1800
Nashville, Tennessee 37238
Telephone: 615-256-0500
Facsimile: 615-251-1058
Email: bdh@h3gm.com

Attorneys for the Trustee

420358-1